UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| THEODORE J. BRANION, JR., | ) | |
| # 447673, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:11-cv-1277 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| LLOYD RAPELJE, | ) | **OPINION** |
| | ) | |
| Respondent. | ) | |

        This is a habeas corpus proceeding brought *pro se* by a state prisoner pursuant to 28 U.S.C. § 2254.  Petitioner was convicted by a Kalamazoo County Circuit Court jury of  assault with intent to murder, Mich. Comp. Laws § 750.83, and arson, Mich. Comp. Laws § 750.72.  He was sentenced as an habitual offender, fourth offense, MCL 769.12, to concurrent sentences of twenty to forty years' imprisonment on the assault with intent to murder conviction, and to ten to twenty years' imprisonment on the arson conviction.

        After unsuccessful attempts to overturn his conviction in state court, petitioner filed this habeas corpus petition.  He seeks federal habeas corpus relief on the same five grounds rejected by the Michigan Court of Appeals:

> I.    Did the trial court abuse its discretion in admitting "other acts"
>       evidence of prior domestic disputes pursuant to MRE 404(b) and
>       under MCL 768.27b, because their probative value was limited,
>       was substantially outweighed by unfair prejudice and much of the
>       evidence was too old.  Its admission was no, therefore, in the
>       interests of justice and petitioner was thereby denied a fair trial.

II.  Petitioner's conviction must be reversed due to the admission of inadmissable hearsay, namely statements allegedly made by Gina Branion more than 5 years ago to a police officer because these statements are specifically disallowed by statute and petitioner received ineffective assistance of counsel for failing to object.

III.  The trial court denied petitioner due process and a fair opportunity to present his defense of mistaken identity, when it failed to omit an inconsistent statement, and when it refused to [sic] the alleged victim recant earlier inaccurate testimony that positively identified petitioner as the perpetrator.

IV.  Petitioner was denied his federal due process rights where his convictions were obtained through knowing use of false and perjured testimony by eyewitnesses.

V.  Petitioner was denied his constitutionally guaranteed right to present a defense where the trial court excluded evidence of circumstances surrounding the voluntariness of his statement.

(Petition, ECF No. 1, PageID.2, 5-9).[1]  Respondent argues that the petition should be denied because the first and second grounds are not cognizable on federal habeas review, that the remaining grounds were procedurally defaulted, and that each of the five grounds lack merit.  (ECF No. 11).

After review of the petition and the state-court record, the Court concludes that petitioner has failed to establish grounds for federal habeas corpus relief.  He has not shown that the state court decisions rejecting the grounds raised in the petition were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," nor that they were

---

[1]Petitioner did not provide any arguments in support of his habeas petition, relying instead the supplemental appeal brief he filed with the Michigan Court of Appeals.  (Petition at 5-7, 9, PageID.5-7, 9).  This Court has considered those arguments in reviewing his habeas petition.

"based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s]."  28 U.S.C. § 2254(d).  Accordingly, the petition will be denied on the merits.[2]

### Standard of Review

The Court's review of this petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt."  *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted).  "AEDPA requires heightened respect for state court factual and legal determinations."  *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings [] are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence."  *Davis v. Ayala*, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied.  28 U.S.C. § 2254(d); *see Premo v. Moore*, 562 U.S. 115, 121 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court

---

[2]This Court has discretion to ignore a procedural default and proceed directly to the merits of an apparently defaulted claim, when to do so would be more expeditious than an analysis of the complicated procedural default question.  *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997); *Bales v. Bell*, 788 F.3d 568, 573 (6th Cir. 2015); *Scott v. Houk*, 760 F.3d 497, 506 (6th Cir. 2014).  In the present case, the grounds raised by petitioner are meritless, so a detailed analysis of the complicated procedural default issues is unnecessary.

proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).  AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012) (*per curiam*).

The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).  "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Id.* at 102-03 (citation and internal quotation omitted); *see Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015).  Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see White v. Wheeler*, 136 S. Ct. 456, 460 (2015); *Davis v. Ayala*, 135 S. Ct. at 2198; *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

The only definitive source of clearly established federal law for purposes of § 2254(d)(1) is the holdings—not dicta—of Supreme Court decisions. *White v. Woodall*, 134 S. Ct. at 1702; *see Woods v. Donald*, 135 S. Ct. at 1377 ("Because none of our cases confront 'the specific question presented by this case,' the state court's decision could not be 'contrary to' any holding from this Court."). "[W]here the precise contours of a right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *Id.* (quotations and internal citations omitted).

An unreasonable application of the Supreme Court's holding must be "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003)). Rather, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. at 103). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' " and "[i]t therefore cannot form the basis for habeas relief under AEDPA." *Hill v. Curtin*, 792 F.3d 670, 677 (6th Cir. 2015) (quoting *Parker v. Matthews*, 132 S. Ct. at 2155); *see Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (*per curiam*) ("As we have repeatedly emphasized, [] circuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'").

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Section 2254 (d)(2) requires that this Court accord the state trial court substantial deference. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review that does not suffice to supersede the trial court's determination. *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013).

### **Findings of Fact**

#### A.   **Circuit Court Proceedings**

Petitioner's convictions for assault with intent to commit murder and arson arise from an incident in which he sprayed his estranged wife, Gina Branion, with lighter fluid and attempted to set her on fire. This was the last in a series of incidents of domestic violence petitioner perpetrated against his wife. He was tried before a jury for four days, beginning May 19, 2009, and concluding May 22, 2009.[3]

At the outset of the trial (outside the presence of the jury), the trial judge held a bond hearing concerning Gina Branion, who had been arrested pursuant to a *capias* writ based on concerns she would not appear to testify in petitioner's trial. (Tr. I at 87-100). Ms. Branion advised the court that she had forgiven petitioner for what he had done to her, and she expressed uncertainty about whether he was the person who

---

[3]Transcripts of the trial proceedings will be designated as follows:
- May 19, 2009 (ECF No. 14): "Tr. I at __."
- May 20, 2009 (ECF No. 15): "Tr. II at __."
- May 21, 2009 (ECF No. 16): "Tr. III at __."
- May 22, 2009 (ECF No. 17): "Tr. IV at __."

sprayed lighter fluid on her.  (*Id.* at 92-93).  She told the court she would appear and testify at the trial.  (*Id.* at 97-98).  At the end of the hearing, the trial judge ordered that Ms. Branion be held in custody until the end of that trial day, and that, if she had not testified by the end of the day, he would release her on a personal recognizance bond to return the next day.  (*Id.* at 99-100).

Gina Branion did appear and testify the next day.  She had been married to petitioner for sixteen years, but they were separated at the time of trial.  (Tr. II at 305, 308).  They have five children in common.  (*Id.* at 306).  In September 2008, Ms. Branion resided with two men at 1104 Fairbanks, Kalamazoo, Michigan.  (*Id.* at 308-09 (*see also* Julie Yunker, Tr. II at 252)).  She had left petitioner a couple months earlier, and they "were not on good standing."  (Tr. II at 309).  She did not want petitioner to know where she lived.  (*Id.*).  Ms. Branion had tried to separate from petitioner a number of times previously, but he would get angry when she tried to leave him.  (*Id.* at 313).

Ms. Branion described the abusive relationship she had with petitioner, which included physical assaults, occasionally resulting in physical injury.  (*Id.* at 312).  Ms. Petitioner physically assaulted her on at least six occasions in which Ms. Branion had separated from him.  (*Id.* at 313).

In September 1993, petitioner grabbed Ms. Branion, threw her into a vehicle, and punched her in the eye and mouth – the latter of which was observed by a police officer.  (*Id.* at 331-332).  When she left petitioner in 1995, he found her, and pushed her down a flight of stairs when she refused to return home with him.  (*Id.* at 332-333).

During another separation in 1995, petitioner grabbed Ms. Branion, threatened to kill her, choked her, smacked her on the head, and held her captive for a while.  (*Id.* at 333).

In 1998, during another separation, petitioner pulled Ms. Branion into his car by her hair; he hit her in the face; and he took her in a house where he held her hostage in the basement.  Petitioner beat Ms. Branion leaving two black eyes and bruising all over her body.  (*Id.* at 333-334).  In 2000, petitioner came to where Ms. Branion was staying and argued with her about being separated.  Petitioner grabbed her by her hair, dragged her into the kitchen, slapped her, and grabbed her groin area while stating that, if he could not have "it," no one could.  (*Id.* at 334).  In 2002, petitioner became angry over the fact that Ms. Branion had left him, and he smacked her and her daughter each in the face.  (*Id.* at 335).

Ms. Branion described an incident in 1996 in which she told petitioner she wanted a divorce.  He became upset and began choking her. (Tr. II at 336).  Petitioner retrieved a hammer and tried to hit Ms. Branion with it.  (*Id.*).  Another woman who was present grabbed a board, and blocked petitioner from striking Ms. Branion with the hammer.  (*Id.* at 338-339).  Petitioner then picked up the board and tried to hit both women with it.  (*Id.* at 339).  After that, petitioner took some lighter fluid and squirted it on Ms. Branion.  (*Id.* at 339-40).  Petitioner then pulled a lighter out of his pocket and tried to light Ms. Branion on fire.  Ms. Branion hit petitioner and was able to run away.  (*Id.* at 340).

Each time Ms. Branion had tried to leave petitioner he would physically assault her, and she would ultimately forgive him and resume their relationship. (*Id.* at 325). In September 2008, however, Ms. Branion was determined to leave petitioner permanently.  On September 22, she told petitioner "that he might as well leave the relationship that [she] was in alone," and that if she did return to petitioner, "nothing would ever be the same again because [she] had a relationship while [they] were married." (*Id.* at 327). Ms. Branion made it "perfectly clear" that she was "not coming back to him." (*Id.* at 328).

As of September 22, 2008, Ms. Branion was aware that petitioner had been trying to find out where she was living, and she was trying to keep him from finding her. (Tr. II at 310).  Petitioner had left several telephone messages for her, one stating he would "blow the house up[.]" (*Id.*).  Ms. Branion testified that this threat made her angry, but she did not take it seriously. (*Id.*).  She was "more scared" for the people she was living with, as she did not want them involved. (*Id.* at 311).  One of the residents had the residence telephone disconnected to prevent petitioner from calling. (*Id.* at 319).

On September 22, 2008, Ms. Branion was sitting in her bedroom on the bed, close to the window, about to watch television. (*Id.* at 314, 316).  At approximately 9:30 p.m., Ms. Branion heard something at the window. (*Id.* at 314).  She "kept hearing like a flick," so she turned and saw a substance come through the open window. (*Id.* at 315).  It smelled like lighter fluid. (*Id.*).  She started screaming and saw "the lighter flick and everything caught on fire" – "the curtain, the screen, everything that was in

the window was on fire . . . including the window pane." (*Id.* at 316). Some of the lighter fluid got onto Ms. Branion's shirt. (*Id.* at 317). She ran into the living room and told one of the other residents that the house was on fire. (*Id.* at 316, 318). The other resident used a fire-extinguisher to put out the flames. (*Id.* at 318).

Ms. Branion and the other resident were in the living room deciding what to do when the picture window broke, then more windows started breaking. (*Id.* at 319). Between the fire and windows breaking, Ms. Branion said she and the other resident did not know whether it was safer to stay in or go out. (*Id.* at 320). Ms. Branion grabbed the other resident, and they ran to a neighbor's house and called 911. (*Id.* at 320-321). Ms. Branion testified that she "thought it was her husband" who sprayed the lighter fluid on her, and that she had told the police that, but she declined to testify at trial that it was him because she was "not sure." (*Id.* at 322).

Sergeant Julie Yunker of the Kalamazoo Department of Public Safety (KDPS) testified at trial. She responded to the 911 call regarding a house fire at 1104 Fairbanks in Kalamazoo, Michigan, at approximately 9:50 p.m. on September 22, 2008. (Tr. II at 252). Deputy Yunker immediately smelled lighter fluid when she walked up to the house. (*Id.* at 257). There was fire damage to the window, window sill and curtains. (*Id.* at 259). Ms. Branion appeared distraught and upset. (*Id.* at 254). Ms. Branion told Deputy Yunker that it was her "ex-husband, Theodore Branion," who set the curtains on fire in her bedroom. (*Id.* at 255). Ms. Branion stated that she had seen his face in the window. (*Id.*).

KDPS Officer Marc Rifenberg testified that he was the first to respond to the 911 report of a house fire at 1104 Fairbanks on September 22, 2008. (Tr. II at 287-88). Ms. Branion advised him that her "ex-husband, Theodore Branion," had started the fire. (*Id.* at 294).

KDPS Detective Charles Dahlinger testified concerning his role in the investigation of the fire at 1104 Fairbanks. He interviewed Ms. Branion on September 31, 2008. (Tr. II at 433). Ms. Branion told the detective that she wanted to press charges against petitioner, and she positively identified petitioner as the person who started the fire. (*Id.* at 433-34). Detective Dahlinger interviewed petitioner on September 23, 2008. (*Id.* at 453). The detective testified to an incriminating statement petitioner made during the interview:

> He did make one statement, that I noted in my report, that he was very defensive about. That he did not start the fire. He didn't know anything about the fire. He doesn't know why Gina would say he started the fire. Towards the end of the interview he made one statement, which I considered maybe a slip up, and he said something, "I didn't mean to hurt Gina." At that point, he realized he made that statement and he wanted to stop the interview with me, and I honored that request.

(*Id.* at 459).

Defense counsel cross examined Detective Dahlinger about a number of matters, including his September 23 interview of petitioner, but counsel did not ask him about petitioner's statement that he "didn't mean to hurt Gina." (*See id.* at 460-67). During re-direct, the prosecutor again asked about that statement and how it had ended the detective's interview of petitioner. (*Id.* at 468). Defense counsel re-crossed the witness without addressing it. (*Id.*).

Cathy Blackful lived across the street from 1104 Fairbanks with her daughter, Kendra Clark.  (Tr. II at 264-65).  She testified that she saw petitioner in the neighborhood around noon on September 22, 2008, the same day as the fire.  (*Id.* at 261-262, 267-68).  Petitioner was looking for Ms. Branion.  (*Id.* at 262).  Ms. Blackful told petitioner where to find Ms. Branion – in the yellow house on the corner.  (*Id.* at 263).

Ms. Blackful's daughter, Kendra Clark, testified to an incident that occurred a few days before September 22, 2008, in which her living room window was broken.  (Tr. II at 272-73).  When she had gone outside her house to investigate, Ms. Clark encountered a man coming from the back of her house carrying a hammer and lighter fluid.  (*Id.* at 275-77).  The man, who she identified as petitioner, asked her if "Gina" lived in her house.  (*Id.* at 276, 279-80).  Petitioner left after Ms. Clark told him Gina did not live there.  (*Id.* at 276).

The defense called four alibi witnesses: Lattoya Harris, petitioner's niece; John Yarber, petitioner's cousin; Breana Branion, petitioner's daughter; and Raqyia Johnson, petitioner's step-daughter.  These witnesses testified regarding petitioner's presence at his daughter's birthday party on September 22, 2008.  The witnesses generally established his presence throughout that evening.  (Tr. III at 486-95, 507-11, 516-23, 531-46).

The jury convicted petitioner on May 22, 2009, of assault with intent to commit murder and of arson of a dwelling.  (Tr. IV at 617).  Petitioner was sentenced on June 8, 2009, to a twenty to forty-year term of imprisonment for the assault conviction,

and a concurrent term of ten to twenty years' imprisonment for the arson. (Sentencing Transcript at 11-12, ECF No. 18-16).

### B. Subsequent Proceedings

Petitioner pursued an appeal in the Michigan Court of Appeals. He raised the same issues he is now pursuing in his habeas corpus petition. The Michigan Court of Appeals affirmed petitioner's convictions and sentence. *People v. Branion*, No.292647, 2010 WL 3564746 (Mich. Ct. App. Sept. 14, 2010). The Michigan Supreme Court denied petitioner's application for leave to appeal. *People v. Branion*, 488 Mich. 1048 (2011) (unpublished table decision).

Petitioner filed his petition for federal habeas corpus relief on December 5, 2011. (Petition, ECF No. 1). On March 19, 2012, petitioner filed a motion to hold this case in abeyance to allow him to pursue an unexhausted claim in state court. (ECF No. 7). The Court denied the motion. (3/22/12 Order, ECF No. 9). A year later, petitioner filed a second motion to hold this case in abeyance, raising essentially the same arguments the Court previously rejected. (ECF No. 25). The Court again denied the motion. (3/15/13 Order, ECF No. 26).

### <u>Discussion</u>

### I. "Other Acts" Evidence Of Prior Domestic Disputes

In his first ground for relief, petitioner claims that he was denied a fair trial by the trial court's abuse of discretion "in admitting 'other acts' evidence of prior domestic disputes pursuant to MRE 404(b) and under MCL 768.27(b). (Petition at 5, PageID.5).

He argues that the probative value of this evidence "was substantially outweighed by unfair prejudice and much of the evidence was too old." (*Id.*).

The extraordinary remedy of habeas corpus lies only for a person held in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). As the Supreme Court explained in *Estelle v. McGuire*, 502 U.S. 62 (1991), an inquiry whether evidence was properly admitted or improperly excluded under state law "is no part of the federal court's habeas review of a state conviction [for] it is not the province of a federal habeas court to re-examine state-court determinations on state-law questions." *Id.* at 67-68 (citations and quotations omitted). Rather, "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id.* at 68; *accord Swarthout v. Cooke*, 562 U.S. 216, 219-21 (2011).

Petitioner has not shown that the admission of this evidence resulted in a federal due process violation. "A due process claim premised on a mistaken state court evidentiary ruling faces a steep climb. The kind of foundational unfairness and arbitrariness needed to show that a flawed evidentiary ruling rises to the level of a due process violation is not a broad category[.]" *Burger v. Woods*, 515 F. App'x 507, 510 (6th Cir. 2013). Garden variety claims that the trial court misapplied Michigan Evidence Rule 404(b) do not "cross the constitutional threshold of due process." *Id.* (citations and quotation omitted). State-court evidentiary rulings cannot rise to the level of due process violations unless they offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental. *Seymour v.*

-14-

*Walker*, 224 F.3d 542, 552 (6th Cir. 2000); *accord Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003). This approach accords the state courts wide latitude in ruling on evidentiary matters. *Seymour*, 224 F.3d at 552.

There is no clearly established Supreme Court precedent that holds that a state court violates the Due Process Clause by permitting propensity evidence in the form of other bad acts evidence.  In *Estelle*, the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  *Estelle*, 502 U.S. at 75. The Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n.5.

While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.  The Sixth Circuit has found that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512.

The Michigan Court of Appeals rejected petitioner's argument that the trial court erred in admitting the evidence of petitioner's prior acts of domestic abuse:

> Here, the prior acts of domestic abuse were highly probative for the prosecution to show defendant's character for assaulting the victim and his propensity to commit acts of violence against her window. It was also relevant to prove defendant's motive. Several of the prior acts of violence against the victim occurred after she expressed her interest in ending

their marriage or while they were separated. Similarly, on the afternoon before the fire the victim told defendant that she wanted to end their relationship. Moreover, she lived with her boyfriend at the time, which, she testified, would have angered defendant. The circumstances leading up to the prior acts of domestic violence provided a motive for defendant to injure the victim and control her.

Additionally, the victim admitted at trial that she refused to assist the prosecution in some of the previous charges brought against defendant for domestic violence. Here, three investigating officers, two of whom interviewed the victim the night of the fire, testified that the victim identified defendant without hesitation. However, the victim testified that she never identified defendant as the perpetrator and she believed defendant did not set the fire. Thus, the prior acts evidence also became relevant and highly probative to explain why she recanted her previous incriminating statements.

The evidence was also relevant to counter defendant's alibi defense, as proving defendant's motive to hurt and control the victim helped place him at her window on the night in question, and made it less likely that defendant's alibi was true. In light of the highly probative value of the other-acts evidence, we conclude that the evidence was not outweighed by the danger of unfair prejudice, i.e., it did not violate MRE 403. The evidence was prejudicial, but there was no danger that marginally probative evidence would be given undue weight or that it was inequitable for the prosecution to use it. The evidence also did not inject extraneous considerations into trial.

Finally, although four of the prior acts of domestic violence occurred over ten years before September 22, 2008, we find that the trial court properly admitted the evidence in the interest of justice. The challenged evidence established a long-standing pattern between the parties. The pattern was essential to explaining and proving the present case. In sum, the evidence was properly admitted under MCL 768.27b. Thus, defendant's argument that the evidence violated MRE 404(b) is irrelevant. The trial court did not abuse its discretion.

*People v. Branion*, 2010 WL 3564746, at *1-3 (citations omitted).

Petitioner has failed to demonstrate any error in the appellate court's considered decision. Accordingly, it cannot be said that the decision of the Michigan Court of Appeals rejecting petitioner's claim was "contrary to, or involve[] an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it was "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

## II.    The Admission of Hearsay Evidence

In his second ground for relief, petitioner claims that the trial court erroneously admitted a five-year-old hearsay statement, and that his trial attorney was ineffective in failing to object.  (Petition at 6, PageID.6).  The challenged testimony was that of a retired police officer who had investigated a 1996 domestic assault in which petitioner had struck his wife with a two-by-four and had squirted her with lighter fluid.  (Tr. II at 469-70).  The officer testified that petitioner's wife had reported to him petitioner's statement to her: "I'll kill you bitch, I'll burn you and the [expletive] house up."  (*Id.* at 470).  Petitioner argued before the Michigan Court of Appeals that this statement was inadmissible under MCL 768.27c because it was made more than five years before the filing of the charges in this case.[4]  *See People v. Branion*, 2010 WL 3564746, at *3.

The Michigan Court of Appeals agreed with petitioner that the trial court committed plain error in admitting the hearsay statement due to the fact that it was made more than five years before the instant charges were filed.  *See id* at *4.  The

---

[4]The Michigan hearsay exception under MCL 768.27c provides, in pertinent part, that a declarant's statement is admissible if all the following apply: (1) it "purports to narrate, describe, or explain the infliction or threat of physical injury upon the declarant"; (2) the trial in which the evidence is offered relates to "an offense involving domestic violence"; (3) the statement "was made at or near the time of the infliction or threat of physical injury"; (4) it "was made under circumstances that would indicate [its] trustworthiness"; and (5) it "was made to a law enforcement officer."  MCL 768.27c(1).  Nevertheless, "a statement made more that 5 years before the filing of the current action or proceeding is inadmissible under this section."  *Id.*

court also held that the record does not support the admission of the statement under any other hearsay exception. *Id.* The court of appeals ruled, however, that the error was harmless based on "the remaining overwhelming evidence of [petitioner's] guilt." *Id.* For the same reason, the court found that petitioner's trial counsel was not constitutionally ineffective because counsel's failure to object "did not prejudice [petitioner] by affecting the outcome of the trial." *Id.* (citing *People v. Gonzalez*, 468 Mich. 636, 644, 664 N.W.2d 159 (2003); *People v. Frazier*, 478 Mich. 231, 243, 733 N.W.2d 713 (2007)).

As noted above, with respect to petitioner's first ground, state-law evidentiary issues do not present cognizable federal habeas claims. *See Estelle v. McGuire*, 502 U.S. at 67-68.

Petitioner has not shown that the admission of this evidence resulted in a federal due process violation. As the Michigan Court of Appeals noted, the evidence of petitioner's guilt, even absent the hearsay statement in question, is overwhelming. State court factual findings are presumed correct, *see, e.g., Davis v. Ayala*, 135 S. Ct. at 2199-2200, and petitioner has offered nothing to rebut that presumption.

In addition, because the Michigan Court of Appeals decided petitioner's claim of ineffective assistance of counsel on the merits, its decision must be afforded deference under AEDPA. *See Burt v. Titlow*, 134 S. Ct. at 15-18; *Harrington v. Richter*, 562 U.S. at 98-101. To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington. See Bell v. Cone*, 535 U.S. at 698-99.

Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013). "[B]ecause the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Woods v. Donald*, 135 S. Ct. at 1376; *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*).

The question before this Court, then, is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 562 U.S. at 123; *see McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015). Petitioner must show that the state courts' ruling on the claim being presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Woods v. Donald*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. at 103); *see also Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

In this case, petitioner cannot demonstrate that the Michigan Court of Appeals' decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*. In *Strickland v. Washington*, the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. Petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced petitioner resulting in an unreliable or fundamentally unfair outcome. 466 U.S. 668, 687-88 (1984). On the prejudice prong, "[petitioner] must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The overwhelming evidence of guilt precludes such a showing. *See Hicks v. Collins*, 384 F.3d 204, 215 (6th Cir. 2004).

Accordingly, there is nothing in the record to suggest that the Michigan Court of Appeals' decision regarding the hearsay statement "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or that it was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s]." 28 U.S.C. § 2254(d).

## III.   The Right to Present a Defense

The Supreme Court has recognized a criminal defendant's right to present a defense. "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *United States v. Scheffer*, 523 U.S. 303, 308 (1998)).

This latitude is limited, however. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citations omitted).

This right is abridged by evidence rules that "infring[e] upon a weighty interest of the accused" and are "'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *United States v. Scheffer*, 523 U.S. at 308 (quoting *Rock v. Arkansas*, 483 U.S. 44, 56 (1987)). "While the Constitution thus prohibits exclusion of defense evidence under rules that serve no legitimate purpose or that they are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. at 326. "A defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. at 308.

A.    Mistaken Identity

As his third ground, petitioner claims that he was denied due process and a fair opportunity to present his defense of mistaken identity when the trial court "failed to omit an inconsistent statement, and when it refused to [allow] the alleged victim [to] recant [an] earlier inaccurate testimony that positively identified [petitioner] as the perpetrator." (Petition at 7, PageID.7). Petitioner relies upon his argument before the

Michigan Court of Appeals, which described this issue: "Specifically, he alleges that the trial court did not allow the victim [his wife] to recant her earlier statements to the officers in which she identified defendant. He further alleges that the trial court errantly limited her testimony for impeachment purposes only." *People v. Branion*, 2010 WL 3564746, at *4.

The Michigan Court of Appeals determined that petitioner's assertions in this regard were simply unfounded:

> Here, contrary to defendant's claims, the record clearly indicates that at trial the victim attempted to clarify her earlier statements to investigating officers. She stated several times at trial that she never identified defendant as the perpetrator. She also testified that she never identified defendant with 100 percent certainty, and that she believed defendant did not commit the crime. We find no evidence that the trial court restricted her testimony, or instructed the jury that it was relevant for impeachment only. Thus, on the record before us, the trial court did not prevent defendant from asserting his defense. Defendant has misread or mischaracterized the record in making his argument. As the alleged errors never occurred, plain error did not occur.

2010 WL 3564746, at *4.

Petitioner has not addressed, much less met, his burden of overcoming the presumption that the Michigan Court of Appeals' factual findings are correct. *See, e.g., Davis v. Ayala*, 135 S. Ct. at 2199-2200. According, this habeas ground is without merit.

B.       The Voluntariness of Petitioner's Statements to Police

-22-

In his fifth ground, petitioner contends that he was "denied his constitutionally guaranteed right to present a defense where the trial court excluded evidence of circumstances surrounding the voluntariness of his statement." (Petition at 9, PageID.9). The Michigan Court of Appeals addressed this issue:

> An investigating officer testified that during an interview, defendant said, "I didn't mean to hurt [the victim]." Defendant contends that he made the statement in reference to the several past incidents of domestic violence, and not the instant charges. Nothing in the record supports defendant's self-serving assertion, and nothing in the record supports that the officer misconstrued defendant's statement or took it out of context. Defendant made the statement during a conversation regarding the events of September 22, 2008. And, even if the officer misinterpreted defendant's statement, the trial court did not restrict defendant's ability to clarify the meaning of the statement on cross-examination or with other evidence. Plain error did not occur.

*People v. Branion*, 2010 WL 3564746, at *5.

This Court has reviewed the trial record, including the entire testimony of the investigating officer, Detective Charles Dahlinger. (*See* Tr. II at 432-68). The record supports the Michigan Court of Appeals assessment of the evidence. There is no error here. Accordingly, petitioner cannot meet his burden of overcoming the presumption that the Michigan Court of Appeals' factual findings are correct. *See, e.g., Davis v. Ayala*, 135 S. Ct. at 2199-2200. Nor can he meet the standards for relief set out in 28 U.S.C. § 2254(d).

-23-

## IV.    Due Process – Eyewitness Testimony

Petitioner raises as his fourth ground for habeas relief his claim that he was denied due process "through the knowing use of false and perjured testimony by eyewitnesses." (Petition at 9, PageID.9). This claim relates to the testimony of Kendra Clark, a neighbor of petitioner's wife whose front window had been vandalized a few days before September 22, 2008. (Tr. II at 272-273). When Ms. Clark went outside to investigate, she encountered a man who was walking from behind her house and across her lawn. (*Id.* at 274-75). The man asked Ms. Clark if "Gina" was there, to which she responded, "[a]in't no Gina here." (*Id.* at 276). The man continued to walk up the street, and Ms. Clark noticed he was carrying a hammer and a can of lighter fluid. (*Id.* at 276-77). Ms. Clark testified that she was able to see the man clearly, but that she had never seen him before. (*Id.* at 275-76). She reported the incident to the police that evening. (*Id.* at 281).

Ms. Clark further testified that, on October 14, 2008, Detective Dahlinger showed her a photographic lineup of six individuals; she "positively" identified petitioner as the man she saw in her yard with the hammer and lighter fluid, and she circled his photo and placed her initials next to it. (*Id.* at 278-280).[5] The photographic lineup the detective used, and which contained Ms. Clark's notation of the identification of petitioner's photo, was admitted into evidence. (*Id.* at 279-80).

---

[5]Detective Dahlinger testified that he showed a photographic lineup that included petitioner's photo as well as "five other individuals that were very similar in terms of height, weight, style, age, race, [and] sex." (Tr. II at 447). He confirmed that Ms. Clark picked petitioner's photo as the person with the hammer and lighter fluid she encountered in her yard the night her window was broken. (*Id.* at 448).

The Michigan Court of Appeals found petitioner's claim that Ms. Clark's testimony was perjurious to be "without merit." *People v. Branion*, 2010 WL 3564746, at *5. The court explained:

> The record indicates that an eyewitness to a break-in that occurred a few days before could not initially identify the perpetrator. However, she was later shown a photographic line-up that included [petitioner] and five other men. She immediately identified [petitioner]. Her testimony was not inconsistent or false, and there is no evidence to support [petitioner's] claim.

*Id.*

Petitioner has offered nothing to overcome the presumption that the Michigan Court of Appeals' factual findings are correct. *See, e.g., Davis v. Ayala*, 135 S. Ct. at 2199-2200. He certainly has not demonstrated that its decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it was "based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

In summary, the Court finds that the first and second grounds do not present cognizable federal habeas claims. Moreover, none of the five grounds have merit.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, the Court has examined each of petitioner's claims under the *Slack* standard.

Petitioner cannot demonstrate that reasonable jurists would find that the denial of habeas corpus relief on each of the grounds raised in his petition is debatable or wrong. *See Slack*, 529 U.S. at 484. He cannot demonstrate that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.; see Kissner v. Palmer*, 826 F.3d 898, 901-02 (6th Cir. 2016). Accordingly, the Court will enter an order denying petitioner a certificate of appealability.

## <u>Conclusion</u>

For the foregoing reasons, a judgment will entered denying the petition because it does not provide a basis for federal habeas corpus relief under 28 U.S.C. § 2254.


Dated: <u>September 28, 2016</u>                    <u>/s/ Robert Holmes Bell</u>
                                        ROBERT HOLMES BELL
                                        UNITED STATES DISTRICT JUDGE